U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Martin Clarke
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4840
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
Marty.Clarke@usdoj.gov

**Via email attachment**

September 17, 2012

Paul M. Flannery, Esq.
25 South Charles Street, 21st Floo
Baltimore, Maryland 21201

    Re:    *United States v. Barry Sugarman*

Dear Mr. Flannery:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to Barry Sugarman, the Defendant, by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by October 19, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Criminal Information charging him with conspiracy to defraud a student financial aid program, in violation of 18 U.S.C. § 371. The Defendant admits that he is, in fact, guilty of this misdemeanor offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

#### Conspiracy to Defraud a Federal Student Financial Aid Program

    a.    The Defendant and at least one other person entered into an unlawful agreement;

    b.    The purpose of the agreement was to commit an offense against the United States,

to wit, fraud in connection with a federal student financial aid program, in violation of Title 20 U.S.C. § 1097(a), the elements of which are:

c. to knowingly obtain or attempt to obtain by fraud or false statement any funds, assets or property provided or insured under Subchapter IV of Chapter 28 of Title 20 of the United States Code ("Higher Education Resources and Student Assistance"), not to exceed $200; and

d. The Defendant knowingly and willfully became a member of the conspiracy.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: one (1) year imprisonment, $5,000 fine and one (1) year supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant pled not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt,

3

and to the following applicable sentencing guidelines factors:

      a.      Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is six (6).

      b.      Pursuant to U.S.S.G. § 2B1.1(b)(1)(B), the base offense level is increased by two (2) levels because the loss was more than $5,000, resulting in an adjusted base offense level of eight (8).

      c.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct, resulting in a final adjusted base offense level of six (6). This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

      d.      The Defendant agrees to pay a fine in the amount of $5,000.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that notwithstanding a potential loss to the Department of Education in excess of $200, the parties agree that the Defendant is pleading guilty to conspiring to commit a misdemeanor under Title 20 U.S.C. § 1097(a). Furthermore, this Office and the Defendant agree that with respect to the calculation of criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The Defendant is free to bring to the Court's attention for consideration in sentencing the factors set forth in 18 U.S.C. § 3553(a).

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the applicable guideline range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Information that this Office has agreed to dismiss at sentencing.

4

### Restitution and Fine

11. In lieu of restitution, the Defendant agrees to pay a fine in the amount of $6,500 [handwritten: $5,000]. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for the payment of the fine. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

13. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Waiver of Appeal

14. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the maximum term of imprisonment under the applicable guideline range; (ii) and this Office

        reserves the right to appeal any term of imprisonment to the extent that it is below the minimum period of imprisonment under the applicable guideline range.

c)     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

15.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

16.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the

statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Martin Clarke
Assistant United States Attorney


I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/19/12
Date

Barry Sugarman


I am Barry Sugarman's attorney. I have carefully reviewed every part of this agreement with him, including the Sealed Supplement. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/19/12
Date

Paul M. Flannery, Esq.

## Attachment A

### Statement of Facts

*The Defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The Defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between approximately January 2010 and September 2012, the defendant, Barry Sugarman, worked as an Admission Representative for All-State Career School ("All-State"), a for-profit trade school at 2200 Broening Highway, Baltimore, Maryland. All-State offers a variety of courses and certifications in the fields of health care, construction, and commercial trucking. When the defendant was first hired, he was paid a salary and he was eligible for performance-based raises and commissions for each student that graduated.

Part of the defendant's duties as an Admission Representative was to counsel the students about the course requirements of the various programs, the cost of tuition, and the available types of financial aid. Students who expressed an interest in a particular program filled out an admissions application, paid an initial admissions fee, and, if needed, were referred to the Financial Aid Department to file for financial assistance. While at the Financial Aid Department, the prospective students received advice about completing the Free Application for Federal Student Aid ("FAFSA"), a prerequisite for seeking federal Pell Grants and student loans. Federal student aid is funded and insured pursuant to Subchapter IV of Chapter 28 of Title 20, entitled Higher Education Resources and Student Assistance, which is administered through the Department of Education ("DOE").

In addition to meeting minimum income and asset requirements, a student applying for federal financial aid must also have a high school diploma, possess a GED, or pass a designated Ability to Benefit ("ATB") test. The ATB test was administered onsite at All-State's Baltimore campus through a third-party. One of the ATB proctors at All-State was a woman with the initials J.C. The defendant became aware through other Admission Representatives that J.C. could ensure that students who failed the ATB the first time would pass it the second time. In other words, she could manipulate the results to give them a passing score. The defendant approached J.C. and asked for her help when a second prospective student failed the ATB. Consistent with what he had been

1

told by other Admissions Representatives, J.C., at the defendant's request, gave the student a passing score the second time he took the test. Thereafter, every time one of the defendant's applicants failed the ATB test, the defendant asked J.C. to fix the score of the second test, which she did every time. During the period of time when the defendant worked with J.C., she fixed ATB scores for more than 150 prospective students. J.C. never asked for compensation in return for her assistance. However, the defendant and other Admission Representatives would occasionally take her out to dinner to express their appreciation.

The defendant's role in falsifying ATB scores was corroborated by recorded conversations between the defendant and Confidential Sources ("CS") and undercover agents who applied for admission to All-State and intentionally failed the ATB test. For example, on October 6, 2011, the defendant met with a CS at his office at All-State to tell him that he passed the second ATB test (even though the CS intentionally gave wrong answers to purposely fail the test). After telling the CS his passing score, the following dialogue took place:

| | |
|---|---|
| CS: | Wow, 335. |
| Defendant: | (laughing) Ms. [J.C] is alright. |
| CS: | Look, ask no questions, tell no lies. |
| Defendant: | She won't do it the first time. |
| CS: | Yeah. |
| Defendant: | For me. She says, they gotta at least make an effort. She says I'll work with them a second time. |
| CS: | That's good. |
| Defendant: | She only does it for me - and [deleted name]. [He] is my partner. The only one she'll do it for. Nobody else knows but - screw them. |
| CS: | (laughing) Yeah. |
| Defendant: | I run my own business. |

In addition to manipulating the ATB test scores to insure that applicants were qualified to receive federal financial aid, the defendant also advised them how to answer questions on the FAFSA about the amount of income they earned in order to qualify for the maximum amount of Pell grants and student loans. He explained that they would meet with a financial aid representative at All-State, someone the defendant would speak to in advance about their situation. During that meeting, the defendant advised them to understate their income from previous years.

The CS's and undercover agents that applied to All-State told the defendant that they did not file tax returns in prior years. However, they made it very clear to him that they made unreported

2

income in an amount that far exceeded the maximum allowable income for consideration for student aid under DOE guidelines. For example, in the following conversation on March 16, 2012, an undercover agent told the defendant that he did not file taxes the previous years even though he made about $30,000 "under the table."

| | |
|---|---|
| Def: | Now let's talk about financial aid. Do you have taxes or did you file at all? |
| UC: | No, no - nope. |
| Def: | Cool, that's all I need to hears. |
| UC: | And she's cool with this? |
| Def: | Who's that? |
| UC: | The lady I'm going to be talking to (referring to financial aid representative). |
| Def: | I don't even think they going to f-cking ---- [deleted name] is the one that setting you up. She's not going to remember what the f-ck she talked to you about. You going to be talking to someone totally different. |
| UC: | Alright. |
| Def: | ... you didn't file, that's all. |
| UC: | Yeah. I haven't done taxes in a minute. I ain't did taxes. |
| Def: | Do you work? Did you - f-ck. You said, "no", then f-ck it, that's it... You tell them you have no profits. If they ask you how you live - under the car, under the table work... but you want to keep it low... |
| UC: | But, well, I'm not trying [to] lie and tell her ... |
| Def: | They can't prove. They're not the fucking IRS up there... You're not filing, so they're not asking. |
| UC: | I'm not trying to get in trouble - you know. |
| Def: | No. |
| UC: | I don't care. |
| Def. | You're not a filer. |
| UC: | Alright. Alright. |
| Def. | So when you do the FAFSA, they are going to treat you as a non-filer. Somewhere on there it's going to ask how much income did you make. Under the table . . I don't' care if you put $4,000... it doesn't matter ... trust me ... they're financial aid, not the IRS... I go through this with everybody... keep telling me $30,000, they are going to require you to file taxes (laughing). |
| UC: | How about I tell them $20,000. |
| Def; | No... you don't want to get into that. Trust me. I do this enough. You're not doing anything wrong. They're not the IRS. They can't force you to do anything. So - just go up there and let's do the FAFSA that they want you to do just as a non-filer. |

Following this conversation, the defendant took the undercover agent to the financial aid department at All-State and told a financial aid representative there that the undercover was a "non-filer." The undercover agent told the financial aid representative that he earned between $25,000 to $28,000 the previous year, but he was a "non-filer." The representative suggested that they put down

3

$1,500 as earned income for that year. The FAFSA, which was filed on March 29, 2012, reflected that amount. As a result of the undercover agent's under-reported income, the DOE awarded him a Pell grant for $3,330, $4,000 in federal unsubsidized loans and $2,333 in subsidized loans.

---

I have read this statement of facts and carefully reviewed it with my attorney. I agree that the United States could prove these facts at trial and that I am guilty of the conduct described herein.

10/19/12
Date

_[signature]_
Barry Sugarman

10/19/12
Date

_[signature]_
Paul M. Flannery, Esquire

4838-2144-6673, v. 1

4